UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN MUIR HEALTH,

              Plaintiff,

     v.

CEMENT MASONS HEALTH AND
WELFARE TRUST FUND FOR
NORTHERN CALIFORNIA,

              Defendant.

Case No. 14-cv-03115-TEH

**ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND**

Plaintiff John Muir Health has moved to remand its case against Defendant Cement Masons Health and Welfare Trust Fund for Northern California.  After carefully considering the parties' submissions and oral arguments, the court now GRANTS Plaintiff's motion to remand for the reasons set forth below.

**BACKGROUND**

On May 29, 2014, Plaintiff filed suit against Defendant in the Superior Court of the State of California, County of Contra Costa, for damages based on the state-law claims *quantum meruit* and breach of statutory duties (California Health & Safety Code Section 1371.4).  On July 9, 2014, Defendant removed this matter to federal court under 28 U.S.C. § 1441 for putative federal question jurisdiction, on the basis that Plaintiff's claims are preempted by the Employment Retirement Income Security Act of 1974 ("ERISA").  Notice of Removal (Docket No. 1).  On August 8, 2014, Plaintiff filed a motion to remand the case to state court, contending that it asserts only state-law based causes of action that are independent of any ERISA-preempted claim for benefits.  Mot. at 3-4 (Docket No. 10).

**LEGAL STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, a defendant may remove it to federal court

under 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The district court may remand the case *sua sponte* or on the motion of a party; the party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689 (9th Cir. 2005). Any doubt as to the right of removal must be resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

## DISCUSSION

In the matter now before the Court, Defendant removed Plaintiff's claim on the mistaken belief that it gave rise to federal question jurisdiction. 28 U.S.C. §§ 1331(a), 1441(a). Generally, the existence of federal jurisdiction must be determined on the face of the plaintiff's complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). A "cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1973). However, the well-pleaded complaint rule does not apply where ERISA's complete preemption provision is implicated. Instead, where a complaint alleges only state-law claims, and those claims are entirely encompassed by ERISA's civil enforcement scheme under ERISA section 502(a), the complaint is converted from "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65-66. While the Court agrees with the Defendant that ERISA includes this exception to the well-pleaded complaint rule for complete preemption, it disagrees with Defendant's assertion that Plaintiff's causes of action are completely preempted.

United States District Court
Northern District of California

### A.  Complete Preemption under ERISA

Traditionally, federal preemption is merely an affirmative defense to the enforcement of state law claims, displacing state law but does not providing federal question jurisdiction.  *Id*. at 58, 63.  ERISA offers such "conflict preemption," in section 514(a).  ERISA's conflict preemption provision preempts state laws that "relate to" ERISA-regulated employee benefit plans, except for state laws "regulating insurance." ERISA § 514(a).  Like most preemption provisions, section 514(a) does not confer federal jurisdiction.

Conversely, section 501(a) of ERISA provides for the "complete preemption" of causes of action that allege violations of the statute.  Unlike conflict preemption, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).  In the seminal case of *Metropolitan Life Insurance Co.*, the Supreme Court articulated the nature of complete preemption under section 502(a), explaining that Congress intended to "so completely pre-empt" this particular area of law, "that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. at 63-64.  Accordingly, complete preemption renders facially state-law based claims removable to federal court.  *Id.* at 66.  In deciding whether to remand this case to state court, the Court must determine whether Plaintiff's claims are completely preempted.

The analytical framework for complete ERISA preemption was provided by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).  In *Davila*, participants and beneficiaries of an ERISA-regulated employee benefit plan brought a state-law based suit in state court in response to the plan's denial of benefits.  The plan removed the suit to federal court, arguing that the claims "fit within the scope of, and were therefore completely pre-empted by," section 502(a) of ERISA.  *Id.* at 205.  In finding

3

preemption, the Court based its analysis on the language of ERISA section 502(a)(1)(B), which provides:

> A civil action may be brought – (1) by a participant or beneficiary – . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

*Id.* at 210. The Court explained that state-law causes of action that fall under the scope of this section – a suit seeking provision of a plan's benefits, enforcing rights under said plan, or otherwise clarifying rights to future benefits – are completely preempted. *Id.* In order to determine whether an asserted state-law cause of action comes within this scope, the Court devised a two-prong test, which provides that a state-law cause of action is completely preempted if: (1) "an individual at some point in time, could have brought [the] claim under ERISA section 502(a)(1)(B)"; and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* The test is in the conjunctive, so a state-law cause of action is only preempted by section 502(a)(1)(B) if both prongs are satisfied.

In *Davila*, the Supreme Court determined that the plaintiffs' claim satisfied both prongs of this new test. The first prong was satisfied because the suit was ultimately "about denials of coverage promised under the terms of ERISA-regulated employee benefit plans," and the plaintiffs therefore could have brought their suit under section 502(a)(1)(B). *Id.* The Supreme Court found that the second prong was also satisfied, rejecting the plaintiffs' argument that their claim relied upon an independent legal duty in the form of a state statute that required health insurers to exercise ordinary care when making health care treatment decisions. *Id.* The Court concluded that the duties imposed by that statute did not "arise independently of ERISA or the plan terms," because the standards set forth in the statute "create[d] no obligation on the part of the health insurance carrier . . . to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity." *Id.* at 213. In other words, the legal obligation under the state statute duplicated the ERISA plan's existing obligations. The Court determined that the

4

plaintiffs' suit was therefore "only to rectify a wrongful denial of benefits promised under [an ERISA plan], and [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 214.

### B. Application of the *Davila* Test to Plaintiff's Claims

Despite the differences between *Davila* and the present case, the *Davila* test is nonetheless appropriate when considering the applicability of ERISA's complete preemption clause. *See, e.g.*, *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) (applying *Davila* to a cause of action alleging state-law based claims). However, the differences between the two cases demonstrate why the *Davila* test is not satisfied here. Most importantly, unlike the case before this Court, *Davila* involved a claim by beneficiaries of an ERISA plan seeking to rectify a wrongful denial of plan benefits.

Plaintiff's Complaint advances two causes of action. First, Plaintiff alleges *quantum meruit* on the basis that Defendant "expressly and/or impliedly requested" that it provide services to Defendant's enrollee, and Defendant subsequently failed to pay for them. Second, Plaintiff alleges that Defendant's failure to pay for the provision of emergency medical services to Defendant's enrollee is a violation of California Health & Safety Code section 1371.4. That statute provides, in relevant part: "A health care service plan . . . shall reimburse providers for emergency services and care provided to its enrollees . . . ." Cal. Health & Safety Code § 1371.4(b). Each of these claims must be addressed separately.

### 1. Plaintiff's Cause of Action for *Quantum Meruit*

Plaintiff's cause of action for *quantum meruit* arises out of an alleged authorization by Defendant "and/or its agent Blue Cross" for Plaintiff to provide medical services to Defendant's enrollee during specified dates of service. Compl. ¶ 12. Plaintiff contends that this authorization comprised an express or implied request for such medical services.

1    Compl. ¶ 18.  In its moving papers, Plaintiff goes on to describe this authorization as an

2    "agree[ment] to pay," a "promise," and an "obligation[]" created by Defendant.  Mot. at 3,

3    9, 14.  After Plaintiff rendered these "requested" services, which it claims benefited the

4    enrollee as Defendant intended, Defendant refused to provide payment.  Compl. ¶ 21-23.

5         Plaintiff's state-law claim for *quantum meruit* does not satisfy the *Davila* test.  First,

6    Plaintiff could not have brought this claim under section 502(a)(1)(B)  because it is not an

7    ERISA entity seeking  to recover ERISA-regulated benefits.  Second, Plaintiff's *quantum*

8    *meruit* claim is predicated on a legal duty independent of ERISA - the quasi-contract

9    created by the authorization phone call.  Consequently, Plaintiff's *quantum meruit* claim is

10   not completely preempted by section 502(a)(1)(B).

12        **a. Prong One of *Davila* is not satisfied**

13        The first prong of the *Davila* test inquires whether Plaintiff is seeking to assert a

14   state-law claim that it, "at some point in time, could have brought" under ERISA section

15   502(a)(1)(B).  *Davila*, 542 U.S. at 210.  After evaluating the allegations in the Complaint,

16   the Court determines that Plaintiff could not.

17        Regarding the first prong, Defendant advances two arguments for preemption based

18   entirely upon the Second Circuit's decision in *Montefiore Medical Center v. Teamsters*

19   *Local* 272, 642 F.3d 321 (2d Cir. 2011).  In *Montefiore*, the Second Circuit breaks *Davila*'s

20   first prong into two steps.  Step one asks whether Plaintiff is the type of party that can

21   bring a claim under ERISA.  *See id.* at 328.  Step two asks whether Plaintiff's claims can

22   be construed as colorable claims for ERISA benefits.  *See id.*  The Court is unaware of any

23   case in the courts of the Ninth Circuit that has applied *Montefiore*'s formulation of the

24   *Davila* test.  However, as discussed below, even if this Court were to apply *Montefiore*'s

25   framework as Defendant requests, Defendant would fail to meet its burden of

26   demonstrating federal jurisdiction.

27        Under *Montefiore*'s step one, the Second Circuit determined that the plaintiff, a

28   hospital, was the type of entity that could bring an ERISA claim because the patient had

assigned his right to reimbursement to the hospital. *Id.* at 329. The same appears to be true in this case. *See* Opp'n at 5 (Docket No. 11) (noting the assignment of the enrollee's claims); Opp'n, Ex. A (Docket No. 12) (showing assignment of claims). Nonetheless, because **both** of *Montefiore*'s steps must be satisfied, it is not enough that Plaintiff *could have* brought an ERISA claim; the cause of action itself must in fact also be one that can be construed as a colorable claim for ERISA benefits. *Id.* at 330-31. On this point, Ninth Circuit case law is instructive.

In *Marin General Hospital. v. Modesto & Empire Traction Co.*, a case quite similar to the one now before the Court and yet inexplicably absent from the parties' submissions, a hospital brought suit against an ERISA plan administrator in California state court for breach of implied contract, breach of oral contract, *quantum meruit*, negligent misrepresentation, and estoppel. 581 F.3d 941, 944 (9th Cir. 2009). After the plan administrator successfully removed the case to federal court, the district court's denial of a motion to remand was overturned by the Ninth Circuit. *Id.* In reversing the decision, the Ninth Circuit applied the *Davila* test and determined that the claims were not completely preempted. *Id.* Similar to the allegations of Plaintiff, the hospital in *Marin General Hospital* claimed that it telephoned the defendant before providing medical services to the defendant's enrollee. *Id.* at 943. During that phone call, the defendant allegedly confirmed that the enrollee had health insurance through the ERISA plan it administered, authorized the enrollee's treatment, and agreed to cover 90% of the enrollee's medical expenses at the hospital. *Id.* After the services were provided, the hospital denied that it owed the hospital 90% of the medical expenses and only paid the amount owed under the patient's ERISA plan. *Id.* The hospital's suit sought the amount necessary to bring the total payment up to 90% of its charges. *Id.* at 947. Importantly, the appellate court determined that the hospital was not arguing that it was owed the additional amount under the enrollee's ERISA plan. *Id.* "Quite the opposite," the court explained, the hospital was suing precisely because it was *not* owed that money under the ERISA plan. *Id.* Rather, the hospital was seeking the additional amount "based on its alleged oral contract with" the

plan administrator. *Id.* The Ninth Circuit held that a claim based on an implied contract does not "duplicate[]" those that are available under section 502(a)(1)(B), rendering the hospital unable to bring these claims under the ERISA scheme. *Id.* at 948. Consequently, had the Ninth Circuit applied the reasoning of *Montefiore*, the plaintiff-hospital's claims could not have been construed as colorable claims for ERISA benefits.

*Marin General Hospital* cited to an earlier case that further elucidates this matter for the Court and directly refutes Defendant's argument under *Montefiore*. In *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), a group of medical service providers sued Blue Cross for breach of contract, alleging that it had improperly changed the fee schedule according to which providers were compensated. *Id.* at 1048. The Ninth Circuit rejected Blue Cross's argument that the providers' right to receive reimbursement derived from the enrollees' assignment of their rights to ERISA benefits - the same argument advanced by Defendants in this case to contend that *Montefiore*'s formulation is satisfied. *Id.* at 1050; *see* Opp'n at 6. The claims were not derivative, the court explained, because the providers were not arguing that Blue Cross violated the terms of an ERISA plan, but that it had breached an entirely separate contract. *Id.* at 1051. In making this finding, the Ninth Circuit stated that Blue Cross was asserting a claim for contractual breach that the ERISA enrollee could not assert, because the enrollees were not party to the provider contracts. *Id.* "The mere fact that Providers could have brought suit against Blue Cross under § 502(a)(1)(B)," the appellate court reasoned, "did not automatically mean that Providers could not bring some other suit against Blue Cross based on some other legal obligation."

As in *Marin General Hospital*, Plaintiff John Muir Hospital is a health services provider that is seeking payment of an amount of money it claims it is owed under an agreement entirely independent of Defendant's obligation to the patient-enrollee. Comparatively, as in *Marin General Hospital*, this claim does not duplicate those available under section 502(a)(1)(B). For this reason, Plaintiff's cause of action cannot be construed as a colorable claim for ERISA benefits as required by *Montefiore*.

United States District Court
Northern District of California

1    To distinguish the cases cited in Plaintiff's moving papers, Defendant attempts on

2    numerous occasions to differentiate claims regarding the right to payment (which are

3    preempted) from claims regarding the amount of payment (which are not preempted).  *See,*

4    *e.g.*, Opp. at 1 ("Plaintiff John Muir Health's Motion to Remand should be denied because:

5    (1) the Hospital's claim for Quantum Meruit, while characterized as a claim for damages,

6    is actually a claim involving the *right to payment* of benefits from an ERISA self-fund

7    health plan as opposed to a claim which challenges the *amount of payment . . . .*")

8    (emphasis in original).  However, read in the context of the cases from which this

9    differentiation arises, it is clear that the distinction applies only where a beneficiary (or his

10   assignee) is seeking the *right to the payment of ERISA benefits*, as opposed to the *amount*

11   *of those benefits*.  Plaintiff here, however, is not seeking the right to payment of ERISA

12   benefits, but the enforcement of an independent financial obligation arising from its pre-

13   authorization correspondence with Defendant.  Put another way, where the plaintiff in

14   *Marin General Hospital* sought the *amount of payment* necessary to close the gap between

15   what it was owed under the ERISA plan ($46,655.54) and what it was promised over the

16   phone ($178,926.54), Plaintiff in this case is seeking the amount of payment necessary to

17   close the gap between what it is owed under the ERISA plan ($0), and what it was

18   allegedly promised during pre-authorization ($634,210.47).  *Compare Marin Gen. Hosp.*,

19   581 F.3d at 943-44, *with* Compl. ¶¶ 12-13.  Accordingly, whether one chooses to view

20   Plaintiff's claim as seeking the *right to payment* of an independent obligation arising from

21   the phone call, or seeking the proper *amount of payment* in excess of the enrollee's

22   authorized coverage, the claim is not completely preempted.

23   Consequently, as in *Blue Cross* and *Marin General Hospital*, the enrollee's

24   assignment of its rights to Plaintiff is of no consequence.  As in both those cases, Plaintiff

25   was paid, in accordance with its assignment, the money owed to the enrollee under the

26

27

28

United States District Court
Northern District of California

1  ERISA plan - which was nothing, as the enrollee failed to file the required paperwork. [1]

2  As in *Blue Cross* and *Marin General Hospital*, Plaintiff now seeks payment "based upon a

3  different obligation." *Marin Gen. Hosp.*, 581 F.3d at 948. That obligation is wholly

4  separate from the obligations Defendant owes to its enrollee and does not duplicate any

5  claim available under section 502(a)(1)(B), as at no point since filing the Complaint has

6  Plaintiff sought payment under Defendant's obligations to the enrollee.  Accordingly, the

7  claim advanced by Plaintiff is one that could not have been brought by the enrollee,

8  because he was not a party to the alleged agreement between Plaintiff and Defendant.  The

9  Plaintiff's claim, therefore, cannot be derivative of the enrollee's assigned rights.  Unless

10  the Court utterly disregards the allegations and case theory of Plaintiff, the *quantum meruit*

11  cause of action cannot be construed as a colorable claim for ERISA benefits, as required

12  by the *Montefiore* formulation.

13      For the foregoing reasons, the Court concludes that Plaintiff's state-law claim for

14  *quantum meruit* based on the alleged authorization of services by Defendant was not

15  brought, and could not have been brought, under section 502(a)(1)(B).  Therefore,

16  Plaintiff's claim does not satisfy the first prong of *Davila*.  Because the *Davila* test is in the

17  conjunctive, the Court's analysis could end here.  However, in the interest of thoroughness,

18  the Court proceeds to briefly explain why the *quantum meruit* claim also fails to satisfy the

19  second prong of *Davila*.

20

21      **b. Prong Two of *Davila* is not satisfied**

22       *Davila*'s second prong for complete preemption requires that there be "no other

23  independent legal duty that is implicated by a defendant's actions."  542 U.S. at 210.  If

24  there is any legal duty independent of an ERISA plan, a claim based on that duty is not

25

26  ─────────────

27  [1] Plaintiff's recognition that the enrollee was not entitled to benefits is demonstrated in the
Blue Cross appeals provided by Defendant, wherein Plaintiff acknowledges that the
insured has failed to complete the necessary forms, and asks Blue Cross to deny and close

28  the claim so that it could pursue other avenues of payment.  *See* Opp'n, Ex. E (Docket No.
12).

1   completely preempted under section 502(a)(1)(B). For the reasons that follow, the Court

2   concludes that Plaintiff's *quantum meruit* claim is based on an independent legal duty, and

3   therefore fails to satisfy *Davila*'s second prong.

4       In *Davila*, the Supreme Court rejected the plaintiff's argument that a state statute

5   created an independent legal duty. In making this finding, however, the Court noted that

6   the statute merely obligated the defendant to make the payments already required by the

7   ERISA plan. Consequently, the legal duty imposed by the statute was not "independent"

8   of the defendant's duty under the plan.

9       Conversely, Plaintiff's *quantum meruit* claim in this case is independent of

10  Defendant's legal duties under the enrollee's ERISA plan because it relies entirely on a

11  separate obligation arising from the alleged authorization agreement between Plaintiff and

12  Defendant. Further, this agreement, unlike the statute in *Davila*, allegedly created a right

13  to reimbursement regardless of Defendant's future determinations of the enrollee's

14  ERISA-plan coverage. The legal implications of this agreement would exist whether or

15  not an ERISA plan existed. *See Marin*, 581 F.3d at 950 ("Since the state-law claims

16  asserted in this case are in no way based on an obligation under an ERISA plan, and since

17  they would exist whether or not an ERISA plan existed, they are based on 'other

18  independent legal dut[ies]' within the meaning of *Davila*."). In making this point, Plaintiff

19  has even gone so far as to say it "could not care less" about Defendant's plan obligations to

20  the enrollee. *See* Reply at 6. Further, a resolution of Plaintiff's state-law claim would not

21  even require an interpretation of the ERISA plan's terms. Instead, a state court will need

22  to determine whether the correspondence between Plaintiff and Defendant amounted to a

23  request for services with the understanding that Plaintiff would reasonably expect

24  payment. As explained in *Marin General Hospital*, "it is not enough for complete

25  preemption that the . . . claims 'relate to' the underlying ERISA plan, or that ERISA

26  section 502(a)(1)(B) may provide a similar remedy." *Marin*, 581 F.3d at 950. While such

27  an argument for conflict preemption can be advanced by Defendant in state court, it does

28  not confer federal jurisdiction.

United States District Court
Northern District of California

Defendant again relies on the out-of-Circuit decision in *Montefiore* to argue that its correspondence with Plaintiff did not create an independent duty under *Davila*. Opp'n at 7 (citing *Montefiore*, 642 F.3d at 332). However, the court in *Montefiore* arrived at this determination because pre-approval was expressly required by the terms of the ERISA plan, and was therefore part of the underlying ERISA obligation. *Montefiore*, 642 F.3d at 332. Here, by contrast, it is unclear whether the enrollee's ERISA plan required pre-authorization. And even if such pre-authorization was required by the plan, it does not excuse Defendant's obligation under California Health and Safety Code section 1371.4 to pay for an enrollee's emergency medical expenses irrespective of whether the provider has been given authorization, as will be discussed below.

Because *Montefiore*'s holding is directly at odds with the Ninth Circuit's reasoning in *Marin General Hospital*, the Court declines to follow the Second Circuit's determination that a provider's correspondence with a health plan, which is relied upon for the provision of services, holds no legal significance. It may well be the case that further discovery and litigation will demonstrate that Defendant's authorization did not constitute a "request" for services or an "agreement" to pay Plaintiff. However, the ultimate success of Plaintiff's allegation is not for the Court to decide under the present motion; the Court is asked merely to determine whether it is the forum constitutionally authorized to hear the case. It is the Court's determination that it is not.

### 2. Plaintiff's Cause of Action for Breach of Statutory Duties

Plaintiff's second cause of action is for a breach of statutory duties under California Health and Safety Code section 1371.4. Compl. ¶¶ 25-32. That statute provides, in pertinent part: "A health care service plan . . . shall reimburse providers for emergency services and care provided to its enrollees . . . ." Cal. Health & Safety Code § 1371.4(b). This subdivision of section 1371.4 was enacted in 1994 to impose a mandatory duty upon health care plans to reimburse non-contracting providers for emergency medical services. *See Bell v. Blue Cross of California*, 131 Cal.App.4th 211, 216 (2005). As a result, it

1    requires payment irrespective of the enrollee's plan determination.  Plaintiff contends that

2    it provided medically necessary emergency services to a patient enrolled in Defendant's

3    health plan, and that a failure to reimburse them for that care is a violation this statute.

4            Defendant argues that the application of section 1371.4 to Defendant is preempted

5    by ERISA.  Opp'n at 9.  In support of this argument, Defendant cites *Cleghorn v. Blue*

6    *Shield of California*, 408 F.3d 1222 (9th Cir. 2005).  In *Cleghorn*, the Ninth Circuit held

7    that the enforcement of section 1371.4(c) against an ERISA plan was preempted where it

8    was used as a vehicle to recover wrongfully denied ERISA benefits.  *Id.* at 1227 n. 6

9    (citing *Davila*, 542 U.S. at 217-18) ("Even a state law that can arguably be characterized as

10   'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim

11   for benefits outside of, or in addition to, ERISA's remedial scheme.").  In that case, unlike

12   in the present one, an ERISA *beneficiary* sought reimbursement for emergency medical

13   services.  *Id.* at 1224.  The plaintiff brought a claim under California's Unfair Competition

14   Law and the Consumer Legal Remedies Act, claiming Blue Shield was required to cover

15   emergency treatment without pre-authorization under California Health and Safety Code

16   section 1371.4(c).  *Id.*  The case was removed to federal court, and was ultimately

17   dismissed for failure to state a cognizable cause of action, which was affirmed on appeal.

18   *Id.* at 1225.

19          The holding of *Cleghorn* does not apply here.  Unlike in that case, where an

20   enrollee was suing for the benefits that he argued were wrongfully denied under an ERISA

21   plan, Plaintiff is a third-party medical provider seeking payment for emergency services

22   rendered to Plaintiff's enrollee, as is guaranteed by California law regardless of the

23   patient's actual entitlement to ERISA benefits.  *Cleghorn* makes clear that section 1371.4

24   is only preempted where it is being used to assert a claim for ERISA benefits without

25   adhering to ERISA's remedial scheme.  Plaintiff has never disputed Defendant's

26   determination that the enrollee failed to file the necessary paperwork to quality for

27   coverage; nor is Plaintiff claiming that the paperwork requirement is abrogated by section

28   1371.4, as was the analogous claim in *Cleghorn*.  *Id.* at 1224.  Because Plaintiff's statutory

United States District Court
Northern District of California

13

1   claim is not a suit seeking the provision of a plan's benefits, the enforcement of rights

2   under said plan, or the clarification of rights to future benefits, it is not a claim available

3   under section 501(a)(1)(B), and is therefore not preempted.

4         For all of these reasons, as well as those articulated in the previous section of this

5   Order, Plaintiff's suit is not a "separate vehicle" to assert a claim for ERISA benefits like

6   the suit in *Cleghorn*.  It is not enough that the application of the statutory claim "relates to"

7   a patient enrolled in an ERISA health plan.  Such an argument for conflict preemption does

8   not confer federal jurisdiction and should be offered as a defense in state court.  The Court

9   therefore concludes that Plaintiff's cause of action for breach of statutory duties is not

10  completely preempted by ERISA.

11

12  **C. Related Ninth Circuit Precedent**

13        Defendant in this case fails to adequately distinguish the Ninth Circuit precedent

14  cited by Plaintiff.  First, *Ceders-Sinai Medical Center v. National League of Postmasters*

15  *of the United States*, 497 F.3d 972 (9th Cir. 2007) supports the Court's finding that

16  Plaintiff's claims are not preempted.  Defendant's argument that *Cedars-Sinai* involves

17  FEHBA instead of ERISA is of no consequence, as the Ninth Circuit has made clear that

18  the two federal statutes have analytically similar preemption provisions.  *See, e.g.,*

19  *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 393-94 (9th Cir. 2002)

20  (holding that FEHBA's complete preemption provision closely resembles ERISA's

21  express preemption provision, and precedent interpreting the ERISA provision thus

22  provides authority for cases involving the FEHBA provision).  Consequently, the Ninth

23  Circuit's holding that a medical center's state-law action against a plan administrator is not

24  completely preempted where it was "suing as a third-party claiming damages, and not as

25  an assignee of rights to benefits," is dispositive.  *Cedars-Sinai Medical Center*, 497 F.3d at

26  950-51.

27        The Ninth Circuit's decision in *The Meadows v. Employers Health Ins.*, 47 F.3d

28  1006 (9th Cir. 1995) also supports the Court's decision.  There, a medical services

United States District Court
Northern District of California

provider was permitted to pursue a state-law cause of action against an ERISA plan because the claims were pursued "not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages." *Id.* at 1008. Defendant failed to adequately distinguish this case, choosing instead to reiterate the Ninth Circuit's reasoning. *See* Opp'n at 8. Certainly, the Court recognizes differences between *The Meadows* and the claims now asserted by Plaintiff. The alleged agreement in that case involved a phone call and a letter verifying the patient's eligibility and coverage. *Id.* at 1007-08. Here, Plaintiff only asserts "authorization," without more detail as to the substance or context of that authorization. Additionally, in *The Meadows*, neither the hospital nor the patient had any existing ties to an ERISA plan during the time period at issue, as the patient had terminated his employment with the employer that provided the ERISA plan. *Id.* at 1007. However, these differences are not determinative. Whether the independent legal duty upon which Plaintiff brings suit arose from a phone call or a letter is of no consequence for the question of preemption. And the patient's enrollment status matters only for the application of California Health & Safety Code section 1371.4(b), which is not implicated by the holding in *The Meadows*. Absent a compelling reason not to do so, the court must rely on the holding in *The Meadows* and find a lack of complete preemption.

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff John Muir Health's claims are not completely preempted by ERISA section 502(a)(1)(B). Because Plaintiff's claims are not completely preempted, the Court lacks federal jurisdiction over this matter and it is rightfully remanded to state court for further adjudication.

**IT IS SO ORDERED.**

Dated:   09/24/14

THELTON E. HENDERSON
United States District Judge